COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT AND VICKY RODRIGUEZ TORRES,<br><br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872  (502)<br><br>RE:  ALLEGED WRONGFUL DISMISSAL, DISCRIMINATION AND DAMAGES |

## MOTION FOR CONVERSION TO A STATUS CONFERENCE

TO THE HONORABLE COURT:

COMES NOW defendant, EUROBANK, INC., (hereinafter Eurobank and/or the Institution and/or the defendant), through the undersigned legal representation and very respectfully states, alleges and prays as follows:

1.     This Honorable Court scheduled the Pre-Trial Conference of this case for February 20, 2009, at 9:00 a.m.

2.     The parties very respectfully request that said Conference be converted to a status conference of the case.  Said request obeys the fact that discovery has not been concluded, including several depositions pending to be taken, so that it is hasty to hold a Pre-Trial Conference at this stage.

3.     We have contacted plaintiff's attorney, Rafael Martinez, Esq., and he has indicated he has no objection to the request for conversion of hearing.

WHEREFORE, we very respectfully request this Honorable Court take notice of the contents herein and accepts the request of the parties to convert the Pre-Trial Conference to a Status Conference.

RESPECTFDULLY SUBMITTED.

I CERTIFY that on this same date I have sent a true and exact copy of this motion to Rafael Martinez Garcia, Esq., P.O. Box 195384, San Juan, Puerto Rico 00919-5384.

In San Juan, Puerto Rico, Wednesday, February 11, 2009.

FIDDLER GONZALEZ & RODRIGUEZ PSC
P.O. BOX 363507
San Juan, Puerto Rico 00936-3507
Tel. 759-3149
Fax: 250-7565

s/ illegible
CARLOS A. PADILLA VELEZ
Bar membership No. 12,748

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SAN JUAN JUDICIAL CENTER
SUPERIOR PART

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT AND VICKY RODRIGUEZ TORRES, <br><br> Plaintiffs, <br><br> V <br><br> EUROBANK, <br><br> Defendant. | CIVIL NO.: KPE2008-0872 <br><br> Re: WRONGFUL DISMISSAL -Act No. 80 of May 20, 1976, as amended <br><br> AGE DISCRIMINATION – Act No. 100 of June 30, 1959, as amended <br><br> DAMAGES – Article 1802 |

MOTION RESIGNING LEGAL REPRESENTATION

TO THE HONORABLE COURT:

COMES NOW the undersigned attorney, who in turn has been representing plaintiffs, and vey respectfully STATES, INFORMS and REQUESTS:

1.     The law firm of Nigaglioni & Ferraiuoli Law Offices, PSC, through the undersigned have represented the plaintiffs since the start of this litigation.

2.     However, effective March 6, 2009 the undersigned shall cease his functions in Nigaglioni & Ferraiouli Law Offices, PSC.

3.     Ruben Nigaglioni, Esq., who is also attorney of record for plaintiffs shall continue handling said representation.

WHEREFORE we very respectfully request this Honorable Court grant the resignation of Rafael J. Martinez Garcia, Esq., and order that  said attorney be eliminated from all subsequent notifications.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, March 4, 2009.

I CERTIFY that on this same date a true copy of this motion has been sent to Carlos A. Padilla Velez, Esq., Fiddler Gonzalez & Rodriguez, P.O. Box 363507, San Juan, PR 00936-3507.

NIGAGLIONI & FERRAIUOLI LAW OFFICES, P.S.C.
Attorneys for plaintiff
P.O. Box 195384
San Juan, Puerto Rico 00919-5384
Tel. (787) 765-99666
Telefax:  (787) 751-2520

s/ illegible

Rafael J. Martinez Garcia
Bar membership number 15760
rafa@nf-legal.com

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SAN JUAN JUDICIAL CENTER
SUPERIOR PART

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT AND VICKY RODRIGUEZ TORRES,<br><br>Plaintiffs,<br><br>V<br><br>EUROBANK,<br><br>Defendant. | CIVIL NO.: KPE08-0872 (502)<br><br>Re:  WRONGFUL DISMISSAL, AGE DISCRIMINATION and DAMAGES |

## JOINT PRE-TRIAL CONFERENCE REPORT

TO THE HONORABLE COURT:

COME NOW the parties in the above captioned case, plaintiff through the undersigned attorneys and respectfully submit this *Joint Pre-Trial Conference Report* to the consideration of this Honorable Court.

A.    **Stipulation of Uncontroverted Facts**

1.    Luis Maldonado Vaillant was born on January 28, 1941.

2.    At age 60, on March 12, 2001, Maldonado started as an employee of Eurobank.

3.    Maldonado was recruited by Jaime Noble and comptroller Yadira Mercado who were his immediate supervisors.  Mr. Jaime Noble was born on February 5, 1951.

4.    On that same date he received copy of the Associates Manual and Rules of Conduct of the Institution.

5.    Through the years Maldonado received copy of the amendments to the policies and standards of the company.

6.    On June 9, 2001 he became a regular employee in the position of Operations Official in the Leasing Department.

7.    As Operations Official Maldonado was in charge of the operations of the sales area, licenses (sale of vehicle tag and vehicle registries) and quality control and had over 22 persons under his charge.

8.    In the month of May 2006 Maldonado passed on to the position of Operations Manager.

9.    As Operations Manager he maintained the same duties and responsibilities.

10.   Maldonado directly supervised Isaac Fernandez, who was the Supervisor of the Client Services Department, and who in turn supervised a group of employees.

11.   On July 11, 2007 Maldonado passed on to the position of Assistant Vice President Operations Manager.

12.   As part of his functions Maldonado supervised Mr. Isaac Fernandez indirectly and the personnel of the Client Services Department.

13.   On July 8, 2005 Maldonado sent an e-mail to Isaac Fernandez, Rosa Calo and other employees of the Client Services Department which included the procedure of cancellation or refinancing balances.

2

14. On December 9, 2006 Maldonado sent to Isaac Fernandez an e-mail in which he instructed him to immediately eliminate the "double penalty on the cancellation balances of the portfolio corresponding to another bank."

15. The double penalty was imposed by the Client Services Area assigned to the Operations Area directed by Maldonado.

16. On September 21, 2007 Maldonado sent to Isaac Fernandez, Rosa Calo and other employees of the Client Services Department an e-mail in which he stated "Effective immediately the cancellation balances "**CANNOT BE INFLATED BY DOUBLE PENALTY OR CHARGES WHICH DO NOT PROCEED.**" Violation of these instructions may be cause for disciplinary actions. (Emphasis on original).

17. In the chain of command, Isaac Fernandez was responsible for Rosa Calo's performance, and in turn Maldonado was responsible for supervising Fernandez.

18. During his employment Maldonado never filed any complaint for discrimination in employment.

19. Maldonado was dismissed on January 11, 2008.

20. At the time of his dismissal, Mrs. Aida Mendez informed him that he was being dismissed due to his inefficiency in his supervisory functions.

21. The company also dismissed Isaac Fernandez and Rosa Calo.

22. The last salary of Maldonado was $4,750.00 monthly.

23. Mrs. Vicky Rodriguez Torres was an employee of the Government Development Bank.

B. **Legal Theory**

1. Plaintiff

a) Wrongful dismissal: Act No. 80 of May 30, 1976, as amended, 29 L.P.R.A. §185 *et seq*.

Act No. 80 regulates the acts related to the dismissal of an employee. It was specifically approved in order to protect the workers in the holding of employment and to discourage wrongful dismissals. In this manner, every employee who dismisses an employee, save that it shows just cause for it, is sanctioned.

Article 8 of Act No. 80, 29 L.P.R.A. §185 (k), creates a presumption that the dismissal of an employee is unjustified. The employee claiming the protection of this law has the duty to allege in its complaint the absence of just cause and thereafter, during the first turn of evidence, prove certain basic elements of its claim so that in this manner the presumption provided by the law is activated.

The employer has the burden to refute said presumption. If the employer alleges among its affirmative defenses the existence of just cause for the dismissal, it must evidence it by the preponderance of the evidence. *Belk Arce v Martinez*, 146 D.P.R. 215 (1998); *Delgado Zayas v Hosp. Int. Med. Avanzada*, 137 D.P.R. 643 (1994). To refute the presumption of wrongful

4

dismissal, the employer may present as affirmative defense, evidence which establishes, by the preponderance of the evidence that there was just cause for the dismissal. *Delgado Zayas v Hosp. Int. Med. Avanzada*, 137 D.P.R. at page 650. The employer is obligated to allege in its Answer to the Complaint the facts that led to the dismissal and prove that it was justified. 29 L.P.R.A. §185k(a); *Srio del Trabajo v I.T.T.*, 108 D.P.R. 536, 544 (1979).

Article 2 of Act No. 80 provides those circumstances that will be considered as just cause for dismissal by stating:

a) That the worker indulges in a pattern of improper or disorderly conduct;

b) the attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

d) Full, temporary or partial closing of the operations of the establishment.

e) Technological or reorganizational changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public;

f) Reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge.

Now then, dismissal for just cause shall not be considered to be that which is made by mere whim of the employer or without reason related to the good and normal operation of the establishment. It has been repeatedly resolved that under Act No. 80, just cause for dismissal is that which has its origin, not in the free will or whim of the employer, but which is linked to the orderly and normal operation of the company in question. *Diaz v Wyndham Hotel Corp.*, 155 D.P.R. 364 (2001). In this sense, it has been established that the mere lack of confidence on an employee does not constitute just cause for dismissal. *Wolf v Neckwear Corporation*, 80 D.P.R. 537 (1958). The Supreme Court ruled that

> The lack of confidence, as valid justification for the dismissal cannot concern the "mere subjective feeling of the employer." It must show that the employee failed its duties "violating rules or orders of the employer, showing negligence, ineptitude or inefficiency in its work or incurring in fraud, serious disloyalty or dishonesty, etc." Only before these objective facts could the lack of confidence be reasonable justification for the dismissal.

*Belk Arce v Martinez, supra*, pages 236-237. On the other hand, the Supreme Court has stated that Act No. 80 allows the justified dismissal of an employee as sanction at the first fault only "if due to its seriousness and its potential of damage puts at risk the order, the security or the efficiency which constitute the normal operation of the establishment." *Delgado Zayas v Hospital Int. de Med. Avanzada, supra; Srio del Trabajo v I.T.T., supra*, page 543. If the employer is unable to establish the just cause for the dismissal, the court must conclude that

6

it was unjustified and the employee shall be entitled to the remedies provided in Act No. 80.

What the legislation applicable to the wrongful dismissal of employees in private companies provides is an economic remedy.   In *Porto v Bentley P.R., Inc.*, 132 D.P.R. 331, 342 (1992), the Supreme Court resolved that all employee's dismissed without just cause shall be entitled to an indemnity of the salary, which is known as severance pay and which is calculated according to the number of years it has worked.    It provides that:

> Every employee in commerce, industry or any other business or place of employment, designated hereinafter as the establishment, in which he works for compensation of any kind, under a contract without a fixed time, who is discharged from his employment without good cause, shall be entitled to receive from his employer, in addition to the salary he may have earned;
>
> (a)    The salary corresponding to two months as indemnity, if the dismissal occurs within the first five (5) years of service; the salary corresponding to three (3) months if the dismissal occurs after the five (5) years up to fifteen years of service; the salary corresponding to six (6) months if the dismissal occurs after the fifteen (15) years of service.
>
> (b)    An additional progressive indemnity equivalent to one (1) week for every year of service if the dismissal occurs within the first five (5) years of service; two (2) weeks for each year of service, if the dismissal occurs after the five (5) years up to fifteen (15) years of service; three (3) weeks for each year of service, after having completed fifteen (15) years of service or more …

29 L.P.R.A. §185(a).  The remedy granted shall be paid taking as base, pursuant to Article 4 of the Act, the rate of highest salary earned by the employee within the three years immediately before the dismissal.    Additionally, in the computation of the salary there must be included all types of compensation earned by the employee, including commissions.  *Beauchamp v Holsum Bakers of P.R.*, 116 D.P.R. 522 (1985).   Said legislation has a repairing nature by providing remedies for the damages which may have been caused by an employee's wrongful dismissal. The compensation it provides is a remedy of an exclusive nature.

> b)    Discrimination by Reason of Age: Act No. 100

The Constitution of Puerto Rico in its Bill of Rights reads that "the dignity of the human being is inviolable" and that "there shall be no discrimination by reason of race, color, sex, birth, origin or social condition, or political or religious ideals."   1 L.P.R.A. Art. II, §1.   In this manner, our Constitution orders the construction of a judicial system which promotes the equality of individuals before the law.

On its part, Article II, Section 16 of our Constitution grants a series of rights to all workers.  1 L.P.R.A. Art. II §16.  Among these is found the right of all workers to receive equal pay for equal work.

Pursuant to the constitutional mandate, our Legislature has made viable and reiterated these principles of justice in our legal system.  In this manner, in the labor scope several statutes have been legislated to prohibit age discrimination.    Because many times work is the support to obtain articles and

8

indispensable services of daily living, the State has a compelling interest to "regulate the labor relations, of avoiding unjust labor practices and the existence, in our jurisdiction, of a clear public policy to protect the rights of the workers." *Diaz v Wyndham Hotel Corp.*, 155 D.P.R. 364, 374 (2001).

Act No. 100 of June 30, 1959, as amended, prohibits the dismissal or unequal treatment in labor conditions against an employee by reason of its age. 29 L.P.R.A. §§146 *et seq.* Said Act specifically provides that discrimination by reason of age "regarding salary, wage, pay or remuneration…" shall be illegal and subject to indemnity. 29 L.P.R.A. §146.

Act No. 100, *supra*, provides that a dismissal or an adverse personnel action without just cause shall be presumed discriminatory and in violation of law. This presumption is of a controvertible character. 29 L.P.R.A. §148. The effect of the aforementioned presumption makes necessary resorting to the Rules of Evidence:

> In a civil action, **a presumption imposes on the party against whom it is directed the burden of providing the nonexistence of the presumed fact.** If the party against whom the presumption is established fails to offer evidence showing the nonexistence of the presumed fact, the trier shall accept the existence of said fact. If evidence is introduced in support of a determination as to the non-existence of said fact, the party wishing to rebut the presumption shall persuade the trier that nonexistence of the presumed fact is more likely than its existence.

32 L.P.R.A. Ap. IV, R. 14 (emphasis ours).

This rule of evidence transfers the burden of proof from one party in the lawsuit to the other. In other words, the defendant is obligated to prove the nonoccurrence of the fact by the preponderance of evidence, that is, prove that the nonexistence of the presumed fact is more likely than its existence. *Ibañez v Molinos de Puerto Rico*, 114 D.P.R. 42 (1983). The presumption expressed is activated when it is proven that the employer did not have just cause to take the adverse personnel action, in our case the absence of rational grounds to set the salary and for the later dismissal of plaintiff. Now then, Act No. 100, *supra*, does not define the term "just cause," so the Supreme Court has stated that it is necessary to resort to the definition which for said concept is provided by the Wrongful Dismissal Act, Act No. 80 of May 30, 1976, 29 L.P.R.A. §185b. *Alberty v Banco Gubernamental de Fomento*, 149 D.P.R.. 655, 661-662 (1999).

In the federal sphere and under Title VII, the Civil Rights Act of 1964, 42 U.S.C. §§ 1981-2000h-6, as amended, it has established a scheme to regulate the turns of evidence in this type of action. With some similarity, in our jurisdiction and under Act No. 100, *supra*, the presumption of discrimination is specifically established. *Diaz v Wyndham Hotel Corp.*, *supra*. The procedural scheme of the presumption established in Art. 3 of Act No. 100 is as follows:

> (i) The employee must present evidence, first, that there was a dismissal or prejudicial act; second, that the action was realized without just cause; and third, some fact which places it within the modality of

10

discrimination under which it claims. Once the employee complies with this first procedural stage there arises the presumption of discrimination of Art. 3 without it having to prove the discriminatory act directly. At this stage, the burden of proof changes and falls on the employer. If the employer does not present sufficient evidence to rebut the presumption, it shall be deemed that the employee has proven its case.

(ii) To defend itself and thus rebut this presumption, the employer has several alternatives. It may present evidence which defeats the basic fact, that is, that the dismissal was justified; or destroy the presumed fact (that the dismissal was not discriminatory); or present evidence to attack both facts.

(iii) Once the employer rebuts the presumption of discrimination and only in this event, the worker must continue its case without the evidentiary benefit of the presumption. That is, present concrete evidence that proves there really was discrimination.

11

*Diaz v Wyndham Hotel Corp.*, *supra*; *Hernandez v T.O.L.I.C.*, 151 D.P.R. 754 (2000); *Alberty v Banco Gubernamental de Fomento, supra*.

A complaint for discrimination under Act No. 100 granted, the worker is entitled to be compensated for the consequent damages of its employer's illegal acts with the penalty provided by law. Said law provides for the employer guilty of the discrimination prohibited shall incur civil liability for a sum equal to twice the amount of damages sustained by the employee on account of such action. 29 L.P.R.A. §146.   The repairing scheme of this postulate, in the protection of workers, purports to provide the victims of discrimination in employment with the instruments necessary so that the damages caused are repaired.  This remedial cause of action includes the repair "**of all the damages suffered,** both economic damages as well as suffering and mental anguish." *S.L.G. Afanador v Roger Electric Co., Inc.,* 156 D.P.R. 651, 67 (2002).

It is fundamental for the repair of a damage the imposition of adequate compensation to once again restore the legal order.  J. Santos Briz, LA RESPONSABILIDAD CIVIL, 2d ed., page 259 (Madrid, Ed. Montecorvo, 1977). The doctrine indicates that "in general the total damage originated to the damaged party is to be indemnified due to the occurrence which generates the liability to the causer of the damage."  M. Albaladejo, commented by J. Santos Briz and A. Gullon Ballesteros, COMENTARIOS AL CODIGO CIVIL Y COMPILACIONES FORALES, Volume XXIV, page 161 (Madrid, Ed. Edersa, 1984).

At times, the Supreme Court has resolved the appropriateness of certain items which may be adjudicated in favor of the employee in a lawsuit for discrimination. Among these are found the moral damages or damages for suffering and mental anguish in addition to the patrimonial damages. Our case law makes no distinction between physical, mental or moral damages for purposes of indemnity. *Garcia v Shiley Caribbean*, 122 D.P.R. 193, 205 (1988); *Correa v Autoridad de Fuentes Fluviales*, 83 D.P.R. 144, 153 (1961); *Hernandez v Fournier*, 80 D.P.R. 93, 97 (1957). Pursuant to this principle, the Supreme Court has stated that damage is all that material or moral impairment suffered by a person "either in its vital natural assets, in its property or in its patrimony, caused in contravention of a rule of law and for which another is liable." *Garcia v Shiley Caribbean, supra*, pages 205-206. Consistently, our legal system promotes a full system of repair in the area of damages which pursue to lead the injured party by an illegal action to its prior condition, as possible.

The patrimonial damages in this type of action include the economic loss based on income and profits which a plaintiff failed to perceive. A provision has been recognized to compensate the amounts unearned these are, the unearned income from the date of the dismissal until the date of the judgment and better known as back pay. Also, within the patrimonial damages that may be granted is the loss of future income or front pay. *S.L.G. Afanador v Roger Electric Co., Inc., supra*; *Odriozola v S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985); *Lopez v ITT Intermedia, Inc.*, 142 D.P.R. 857 (1997). Although the

Supreme Court has reiterated that the preferential remedy in cases of dismissal is the reinstatement in employment, this option shall proceed when at the discretion of the court it is possible, limiting thus the patrimonial damages to the granting of back pay.

Under federal legislation, as well as in Puerto Rico, the remedies of back pay and of front pay have been recognized. The back pay compensates the plaintiff for the loss of income from the dismissal until the judgment, while the front pay is a compensation for the loss of income from the judgment onward. See, e.g. *Johnson v Spencer Press of Main Inc.*, 364 F.3d 368 (1st Cir. 2004). These two remedies together with the granting of a compensation for moral damages has the purpose of placing the injured party in a situation similar to the one he was in just before the illegal action. The Supreme Court has resolved that, the same as it federal counterpart, Act No. 100, *supra*, grants the right to compensation for future income in the cases in which the reinstatement of the employee to its position cannot be decreed. *Odriozola v S. Cosmetic Dist. Corp., supra*, pages 509-510.

On its part, the moral damages are considered non-economic or non-patrimonial damages, because their award is not based on an exact or economic equivalency, but not because of this do they cease to be compensable in money. *Garcia v Shiley Caribbean, supra*. It has been recognized the certain degree of speculation entailed by the valuation of the damages, task which becomes delicate and oppressive for the trier. To such effect, our case law has pointed to the discretion of the trier using the sense of

14

justice and of human conscience in its determination.  *S.L.G. Rodriguez v Nationawide*, 156 D.P.R. 614 (2002); *Urrutia v A.A.A.*, 103 D.P.R. 643 (1975).  In the estimation of the damages, the courts of instance are in a better position than the courts of appeal due to their direct contact with the evidence.  *Rodriguez v A.E.E.*, 116 D.P.R. 443 (1985).

The repairing function of Act No. 100, *supra*, orders the full repair of all the damages suffered by the injured party as a result of a discrimination of those prohibited therein.  Santos Briz states that to value a damage the notion of the "interest," must be taken into consideration, in which "the damage is determined by an operation of calculation, comparing the real situation of the patrimony after the damaging event and **the imaginary condition it would present if it had not occurred**.  The difference resulting indicates the existence of the damage and its amount."  J. Santos Briz, *op. cit.*, at page 127 (emphasis ours).

c)   Article 1802 of the Civil Code

The Supreme Court has repeatedly recognized that "the concept of guilt of Art. 1802 is so infinitely broad as any fault of a person which produces a wrong or damage."  *Soc. de Gananciales v El Vocero de P.R.*, 135 D.P.R. 122 (1994), *Bonilla v Chardon*, 118 D.P.R. 599, 610 (1987),  *Colon v Romero Barcelo*,  112 D.PR. 573, 579 (1982).

In *Santini Rivera , v Serv. Air, Inc.,* the Supreme Court resolved that:

> the relatives of an employee who has been the
> victim of discriminatory treatment by its

> employer under Act No. 100 have their own cause of action under Art. 1802 of the Civil Code to obtain indemnity for the damages which they themselves have suffered as a result of the mentioned labor discrimination. In such circumstances, the damages suffered by the relatives themselves shall be compensated once the discriminatory treatment in question is established.

*Santini Rivera v Serv. Air, Inc.*, 137 D.P.R. 1, 14 (1994). Not only are the damages suffered by the victim or injured party directly for a guilty or negligent act compensable but also the moral damages suffered by the "persons linked by kinship ties, love and affection" with the victim or the injured party. *Id.* (citing *Hernandez v Fournier*, 80 D.P.R. 93, 97 (1957). This is due to the fact that the material and moral damage caused by a guilty or negligent act "may redound on several persons. And in such event, each one of these acquires an independent action against the causer...since the source of the liability is precisely the particular and personal damage suffered by each one of them." *Id*, at page 10.

2.   **Defendant**

   **Theory:**

Eurobank is a financial institution which has several operational divisions, among them Eurolease in charge of motor vehicle and equipment leasing. As any employer Eurobank complies with the labor laws and to ensure its compliance it has an Associates Manual which contains the standards and policies of the company, among these, those which prohibit age discrimination and establishes a mechanism of complaints. Said manual is delivered to all employees.

16

Then, plaintiff **Luis Maldonado Vaillant** was recruited by Eurobank on **Mar5ch 12, 2001. At that time Maldonado was 60 years old.** Eventually Maldonado came to occupy the position of Assistant Vice President of the Leasing Operations Area. In that position, Maldonado was in charge of the operations of that department and had personnel under his charge and supervision.

During his employment Maldonado did not adequately exercise his supervisory duties of his position, towards his subordinates, particularly towards Mr. Isaac Fernandez (supervisor of the Client Services Department), and Mrs. Rosa Calo (employee of the Client Services Department). This situation provoked that personnel of lower hierarchy and under Maldonado's direct supervision incur in practices contrary to the standards of the institution, by charging Bank clients inappropriate charges as "double penalty" when they cancelled the payment balances of the leases. This conduct was contrary to the standards of the institution and the contracts signed by Eurobank with the clients. Maldonado was aware of this practice by personnel under his charge and despite that on December 2006 he instructed Fernandez to discontinue it, he did not adequately exercise the supervision, to ensure that it did not continue, and on the contrary the practice did continue.

The lack of adequate supervision by plaintiff over his subordinates, provoked that the institution suffer economic losses totaling $125,000.00, since an employee of the entity established an illegal scheme and appropriated the reimbursements which corresponded to the clients who had been charged a

'double penalty' or who were reimbursed the interests paid in excess or other amounts. In view of this situation, the company started an investigation in which Maldonado was interviewed. Upon being interviewed by the auditor, Juan R. Calderon, Maldonado denied knowing that the 'double penalty' was being charged by the personnel under his charge and indicated that he had learned of this from the auditor himself. Evidently Maldonado lied to the auditor, since thereafter he produced several communications to his subordinates, among these one addressed to: Isaac Fernandez, Rosa Calo and others, by which he instructed them how to compute the cancellation balances and thereafter another communication of December 2006 prepared by Maldonado an addressed to Isaac Fernandez, indicating that the collection of a 'double penalty' was inappropriate. This confirms that Maldonado was aware of that practice since 2006 and that he did not exercise adequate supervision to detain it.

After the communication of 2006 and having detected the fraud occurred, on September 27, 2007, Maldonado sent another communication addressed to the personnel of the Client Services Department including Isaac Fernandez and Rosa Calo, stating that effective immediately the cancellation balances could not be inflated with a double penalty or other charges not applicable. Then, after concluding the investigation, Eurobank decided to dismiss the employees involved which had knowledge of the collection of inappropriate charges. These were: Rosa Calo, Isaac Fernandez and Luis Maldonado. The latter was dismissed by his lack of diligence and supervision which propitiated the fraudulent scheme which ended with an economic loss to the bank.

The lack of adequate supervision of plaintiff and his neglect, provoked that this situation was not timely corrected nor that effective and immediate measures could be adopted to prevent these events.  It is evident that plaintiff failed his duties, showing negligence, ineptitude and inefficiency in his work, and by doing so, acted against the best interests of the institution.

Plaintiff's conduct configured violations of the Standards Manual and Ethics Code of the institution. The seriousness of the faults incurred by plaintiff entail the dismissal and would have constituted recklessness of the company to await the reiteration of said conduct in order to take corrective action.

In these circumstances, the plaintiff's dismissal was not arbitrary or capricious rather it was related to the good and normal operation of the company. All the acts of defendant towards plaintiff were for legitimate, justified, non-discriminatory reasons and related to the adequate administration of the business.

**As is known, the negligence, incompetence, disloyalty, and disobedience of the rules and orders of the employer, are justified reasons to dismiss an employee**. *Mercedes Bus Line v Tribunal de Distrito*, 70 D.P.R. 690, 695 (1949).  On the particular, in *Blanes v Tribunal de Distrito*, 69 D.P.R. 113, 120 (1948), our Supreme Court stated:

> "In all employment contracts there exists, express or implicitly the condition that the employee is to comply the duties of his employment in a' competent manner and consequently **if it is shown that the employee is incompetent, inefficient or negligent, in such manner that to continue with its services would result damaging to**

19

> the employer and even of third parties, this fact constitutes just cause for the dismissal."

On the other hand, in *Autoridad de Edificios Publicos v Union Independiente de Empleados*, 130 D.PR. 983 (1992), the Supreme Court of PR determined that "lying tends to destroy the dynamics with the employee and affects the good operation of the company. This act, similar to the one presented in the case at bar, is an act of dishonesty which denotes an absence of moral value." See also: *Miranda Ayala v Hospital San Pablo*, 2007 TSPR 62.

Consequently, the plaintiff's dismissal was justified, not arbitrary or capricious since it obeyed legitimate reasons of the bank, non-discriminatory and related to the good and normal operation of the entity.

Finally, during his employment relation, plaintiff received copy of the policies and standards of the financial institution, which among others prohibit discrimination in employment. **Despite this, plaintiff never complained of discrimination in employment, nor did he use the mechanisms which existed in the institution to complain. It is evident that after his dismissal, plaintiff attempts to shield his nefarious conduct alleging he suffered discrimination. It concerns a legal strategy lacking of evidence and grounds.**

As is known the presumption of discrimination established by Act No. 100 of May 30, 1959, is not activated at the stage of the allegations, as resolved by the Supreme Court of Puerto Rico. In fact, the burden of the proof to establish that the dismissal obeyed discriminatory reasons, falls exclusively on Maldonado,

who would have to establish sufficient evidence in order for the Court to conclude that the <u>real reason for his dismissal was his age</u>, and not the events related to this poor performance and acts. As we have indicated here it concerns a case in which Maldonado did not adequately exercise his role of supervision and for that he was dismissed. His age was in no way considered by the bank at the time of making the decision to dismiss him. **Also, it concerns an employee who was recruited and dismissed, already at the protected age (more than 40 years old) so that there is no place to talk about discrimination.**

In summary with regard to the claim for age discrimination under Act No. 100, all the evidence clearly points that the reason for plaintiff's dismissal was in no way due to discriminatory reasons because of his age; on the contrary, it shows that his dismissal was due to his poor supervision and performance which promoted the fraud committed.

**Applicable Law**

A. **ABOUT THE JUSTIFIED DISMISSAL AND SEXUAL HARASSMENT**

At the start it must be emphasized that in Puerto Rico there is no prohibition *per se* against the dismissal. <u>Arroyo v Rattan Specialties, Inc.</u>, 117 D.P.R. 35, 65, (1986); <u>Porto v Bentley Puerto Rico, Inc.</u>, res. December 23, 1992, 92 J.T.S. 175. <u>Santiago v Kodak Caribbean</u>, 129 D.P.R. 49 (1992); <u>Velez v Pueblo International</u>, res. March 18, 1994, 94 J.T.S. 37. The employer does not have a duty to not dismiss its employees. **Act No. 80 of May 30, 1976, 29 L.P.R.A. sec. 185a *et seq.*, does not prohibit the dismissal, it only**

21

establishes a presumption of unjustified dismissal, which is <u>defeated</u> when the employer shows that the decision was not arbitrary or capricious and that it was related to the good and normal operation of the company.

As known, the negligence, incompetence, disloyalty and disobedience of the rules and orders of the employer, are justified reasons to dismiss an employee. <u>Mercedes Bus Line v Tribunal de Distrito</u>, 70 D.P.R. 690, 695 (1949). On the particular, in <u>Blanes v Tribunal de Distrito</u>, 69 D.P.R. 113, 120 (1948), our Supreme Court stated:

> "In all employment contracts there exists, expressly or implicitly, the condition that the employee must comply the duties of his employment in a competent manner and consequently **if it is shown that the employee is incompetent, inefficient or negligent, in such manner that to continue with its services it would result prejudicial to the employer and even third parties, this fact constitutes just cause for the dismissal."**

Nevertheless, Act No. 80, *supra*, does not exclude from the sanction or dismissal in the first or only offense that fault which intensity of grievance thus requires protecting the security or the efficiency which constitutes the normal operation of the establishment. *Delgado Zayas v Hosp. Int. Med. Avanzada*, 137 D.P.R. 643, 650 (1994). **In turn, it has been recognized that a single offense or first fault constitutes just cause for the dismissal, if due to its seriousness and potential wrong puts at risk the order, the security or the efficiency which constitute the normal operation of the company. It is required that said fault be of such seriousness or nature that it reveals an attitude or a detail of the employee's character, so harmful to the peace and**

22

**good operation of the company, that it would constitute an imprudence to await its reiteration to separate it from the establishment.** *Secretario del Trabajo v I.T.T., supra*.  The essential matter is that the intensity of the wrong perpetrated by the employee reveals a condition, which within the context of the employment is not acceptable or intolerable to the employer, regardless that it concerns an isolated act.  See *Torres Solano v P.R.T.C.*, 127 D.P.R. 499 (1990) (physical aggression); *Autoridad de Edificios Publicos v Union Independiente*, 130 DPR 983 (1992) (lying on the employment application).  *Srio. del Trabajo v G.P. Inds. Inc.*, 153 D.P.R. 223 (2001) (adulterous relationship in the workplace).

        In the present case Maldonado's dismissal was not arbitrary or capricious.  On the contrary it was justified since plaintiff was negligent, careless and inefficient in the performance of his functions and failed the duties of his position. Plaintiff's dismissal was fully justified, because he did not adequately exercise his supervisory duties of his position, towards his subordinates.  This situation provoked that personnel of lower hierarchy incurred in practices contrary to the standards of the institution, by collecting inappropriate charges as "double penalty" detrimental to the institution and its clients.  Additionally, the lack of adequate supervision by plaintiff over his subordinates, provoked that the institution suffer economic losses totaling $125,000.00 due to his lack of diligence.   The institution dismissed other employees as a result of these deviations. Plaintiff's lack of adequate supervision and his carelessness, provoked that this situation was not timely corrected nor that effective and immediate measures be adopted to prevent these events.   It is evident that

plaintiff failed his duties, showing negligence, ineptitude and inefficiency in his work and, by doing so, acted against the best interests of the institution.

On the other hand, during the investigation performed by the institution, the plaintiff denied having knowledge of the irregularities object of the investigation, although thereafter the plaintiff submitted copy of a communication he had addressed to one of his subordinates in December 2006, telling him to discontinue the practice of making excessive charges for "double penalty." Evidently during the investigation plaintiff hid information essential to the institution, which is contrary to the company standards and his duties as employee and he was dishonest. **In turn, the communication confirms that since prior to December 2006 plaintiff was aware of the irregularities which the personnel under his charge committed and did not take adequate, effective and immediate measures to avoid this situation, which later resulted damaging to the institution and its clients.**

Consequently, plaintiff's dismissal was justified and motivated by legitimate and not pretextual business reasons, addressed to procuring the good and normal operation of the institution and not by reason of his age.

Plaintiff's conduct configured violations to the Standards Manual and Ethics Code of the institution. The seriousness of the faults incurred by plaintiff entail the dismissal and would have been imprudent of the company to await the reiteration of said conduct to take corrective action.

In these circumstances, the plaintiff's dismissal was not arbitrary or capricious rather it was related to the good and normal operation of the company.

24

All the acts of the defendant towards the plaintiff were for legitimate, justified reasons, non-discriminatory, due to which the Complaint must be dismissed.

Ultimately, the management prerogative grants the employer the faculty to take legitimate administrative measures it deems necessary for the sound administration of its business. *Guía revisada para la interpretación y aplicación de la Ley Núm. 80, supra*, at page 39.

### B. ACT NO. 100 AND DISCRIMINATION IN EMPLOYMENT

On the other hand, plaintiff alleges he was dismissed from his employment due to his age, and that this constituted an illegal and discriminatory act, under Act No. 100. He is incorrect, since as stated above that Eurobank had legitimate reasons – related to the business – and not discriminatory to dismiss him. In fact, Maldonado never presented a claim of discrimination, while employed by the bank. Additionally, he was recruited when he was 60 years old, which confirms that the Bank did not discriminate by reason of age. Actually the persons dismissed together with Maldonado have different ages, which in turn rules out the existence of a discriminatory attitude.

**At the start it must be remembered that in actions for discriminatory dismissal, <u>the plaintiff has the burden of proof, as in any other civil action, to show the essential element that its dismissal was discriminatory</u>**. "What happens is that the presumption eases the burden if it establishes the basic facts which activate it, that is, that it was dismissed without just cause and that this is located within the modality of the discrimination under which he claims." (Once it is activated, then defendant has the obligation to

persuade the trier of the non existence of the presumed fact, not before.  Article 3 of said Act No. 100 (29 L.P.R.A. Sec. 148) provides a controvertible presumption of discrimination favorable to the employee, which obligates the employer to prove that the dismissal was not discriminatory.

**To activate the presumption of discrimination, the plaintiff employee must prove three elements: (1) that there was a dismissal or damaging act; (2) that it was made without just cause; (3) present evidence indicative of the modality of discrimination which is linked to the dismissal**. It is at that time that the presumption is activated.  *S.L.GT. Hernandez-Beltran v TOLIC*, 151 D.P.R. 754 (2000); *Belk v Martinez, supra*.  The presumption of Art. 3 of Act No. 100, *supra*, comes into play in the evidentiary stage of the case, that is, it is activated during the trial, not before.  **The mentioned article "does not alter in its totality the evidentiary scheme which prevails in our jurisdiction, where once the complaint is filed, there corresponds to plaintiff at the trial to start with the presentation of the evidence of its allegations, before defendant is obligated to rebut it**."  If plaintiff during the first turn of the evidence, does not present sufficient evidence to sustain its allegations, defendant does not have to defend itself.  The presumption established in the cited Art. 3 purports to facilitate to the plaintiff employee proving its claim, **not release it from the need and obligation of presenting evidence to prove its allegations**.  *S.L.G. Hernandez-Beltran v TOLIC, supra*.

However, we have resolved that different from the federal doctrine, this does not mean that in our jurisdiction it is necessary that the employer

26

"articulate" affirmatively a reasonable explanation for the dismissal.  *Ibañez v Molinos de P.R. Inc.*, 114 D.P.R. 42, 53 (1983).  **Suffice that the employer prove, even by circumstantial evidence, that the reason for the dismissal was not discriminatory for the presumption to be destroyed**.  *Ibañez v Molinos de P.R., Inc., supra*.

In the present case, Maldonado bases his claim of discrimination on two alleged discriminatory comments.  He adduces that in 2006 two salesmen and a client, who hierarchically were below him, referred to him as "the old man." In fact, Maldonado joked constantly with the employees due to the daily relation that existed.  These comments even if true were isolated and made by persons without any decisional authority.  Also, Maldonado did not complaint about them and for the time passed the claim based on these facts would be time-barred.

On the other hand, Maldonado alleges that Mr. Jaime Noble who was born in 1951, his then immediate supervisor asked him "whether if he (Maldonado) was thinking about retiring."  Maldonado said no, since he was thinking to work some time longer.  In fact between Noble and Maldonado there was a relationship of trust.  This comment allegedly arose in an informal manner during a conversation they both held about work.  At the time the alleged conversation occurred in January 2008, Noble was 57 years old and Maldonado 67.

Maldonado alleges that this comment purported to force him to retire.  However, such isolated statements and without other facts which may evidence Eurobank's intention to discriminate against elderly employees, are not

sufficient to activate the presumption of discrimination. All the more when Maldonado was recruited at age 60 and despite knowing the procedures and anti-discrimination policies, he did not complaint.

Also, as we have indicated, Eurobank had legitimate and not discriminatory reasons to dismiss him, in consideration of the irregularities in the Department managed by Maldonado. This alone defeats any inference of discriminatory attitude. *Ibañez v Molinos de Puerto Rico*, 114 D.P.R. 42, 49 (1983).

### C.   List of Potential Witnesses

####   1.   Plaintiff

a)   Luis R. Maldonado Vaillant

b)   Vicky Rodriguez Torres

####   2.   Defendant

a)   **Juan R. Calderon, General Auditor**: he shall testify about the auditing process realized at the end of 2007, the interviews made and his findings.

b)   **Jaime Noble, then Senior Vice President of the Leasing Department**: shall testify about the operation of the Leasing Department, the tasks under the responsibility of Mr. Maldonado, the inappropriateness of the charging of a double penalty, and shall deny the alleged discriminatory remarks alleged by plaintiff.

c)   **Aida Mendez, Vice President Human Resources**, shall testify about the process ands reasons for plaintiff's dismissal as well as that of other employees dismissed that same day for the facts which resulted in the dismissal.   She shall testify about the anti-discrimination standards existing in the company, the procedures existing and the absence of any complaint by Maldonado for alleged age discrimination.

d)   **Angel Rivera**:   Comptroller shall testify about the irregularities found in the Maldonado's area of supervision.   He also intervened in the investigation of the facts which motivated Maldonado's dismissal.

## D.   Expert Witnesses

### 1.   Plaintiff

None.

### 2.   Defendant

None.

## E.   Depositions to be presented as evidence at the trial

### 1.   Plaintiff:

At this time plaintiff does not foresee it shall use any deposition as evidence in the trial.  However, it reserves the right to use any deposition for the purposes permitted under Rule 29.1 of Civil Procedure, 32 L.P.R.A. Ap. III.

2. **Defendant**:

    a.    The deposition taken of plaintiff shall be used for the purposes permitted by the Rules of Civil Procedure.

    b.    The deposition of co-defendant Vicky Rodriguez is pending.

**F.   Controversies to be submitted to the Court**

1. Whether the non-payment of the severance pay after Mr. Maldonado's dismissal violated the provisions of Act No. 80 of May 30, 1976 (29 L.P.R.A. §185), as amended.

2. If the court determines that Mr. Maldonado was entitled to the severance pay under Act No. 80, what would be the amount of said severance pay?

3. If Mr. Maldonado was the object of age discrimination during his term of employment with Eurobank.

4. Whether Mr. Maldonado's dismissal violated the provisions of Act No. 100 of June 30, 1959 (29 L.P.R.A. §146), as amended.

5. If the Court Mr. Maldonado was the object of age discrimination during the term of his employment with Eurobank or if its dismissal violated the provisions of Act No. 100, what would be the amount of the damage for loss of emergent profits?

6.   If the Court Mr. Maldonado was the object of age discrimination during the term of his employment with Eurobank or if his dismissal violated the provisions of Act No. 100 what are the damages and moral anguish?

7.   If the Court Mr. Maldonado was the object of age discrimination during the term of his employment with Eurobank or if his dismissal violated the provisions of Act No. 100 what are the damages and moral anguish of Mrs. Rodriguez?

**Defendant**

1.   Determine whether plaintiff's dismissal was justified or not, pursuant to the evidence and the state of law in effect.

2.   Determine whether plaintiff manages to establish that the reason for his dismissal, obeyed discriminatory motives by reason of age.

**G.   Documentary Evidence**

**Plaintiff**

Plaintiff's personnel file, including, without limitation, the dismissal letter, evaluations, promotions and salary increases.

**Defendant**

1.   Audit Report of October 18, 2007 prepared by Juan R. Calderon.

2.   Standards Manual and Ethics Code of the company.

3.   Acknowledgement of receipt by plaintiffs of the standards and policies of the company.

4.   E-mails of plaintiff to the personnel of the Client Services Department:

a.   July 8, 2005

b.   January 20, 2005

c.   December 8, 2006

d.   September 27, 2007

**H.   Discovery Mechanisms**

**Plaintiff**

None.

**Defendant**

The discovery has not concluded.  Co-plaintiff's deposition is pending.

**I.   Time to present evidence**

**Plaintiff**

Two days.

**Defendant**

2 days.

**J.   Other Matters**

**Plaintiff**

,

None.

**Defendant**

1.  Eurobank requests term to file a Motion for Summary Judgment.

2.  Discovery has not concluded.

**WHEREFORE** plaintiff requests that the Court deem its Order complied and proceed to schedule the next available date of the Court for the Pre-Trial Conference.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, June __, 2009

NIGAGLIONI + FERRAIUOLI
Attorneys for plaintiffs
P.O. Box 195384
San Juan, Puerto Rico 00919-5384
Tel. (787) 765-996
Fax: (787) 751-2520

Fiddler Gonzalez & Rodriguez PSC
Attorneys for Eurobank
P.O. Box 363507
San Juan, Puerto Rico 00936-3507
Tel. (787) 759-3149
Fax (787) 250-7565

s/ illegible
Ruben T. Nigaglioni
Bar membership no. 4344
ruben@nf-legal.com

s/ illegible
Carlos A. Padilla Velez
Bar membership no. 12,748

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

33