A.   That is so.

Q.   Look, when I asked you about the damages you had stated that you had lost the job and later you mentioned your reputation upon being dismissed, you mentioned that.

A.   What?

Q.   When I ask you about what damages had been caused to you by all those remarks, you told me you lost the job.  You mentioned something about the reputation upon being dismissed, your reputation.  And that the people questioned how you were dismissed.  That is what you testified at that time.  When you mention your reputation upon being dismissed, what did you mean?

A.   Reputation in the sense of being effective in my performance.

Q.   Of being effective in your performance.

A.   Right.  I have always been known in banking as a very strict person and for my excellent manner of operations.

Q.   And why do you understand that your reputation has been affected by being dismissed?

A.   That is, because no one… that is, no one expected that situation that all of a sudden I was without a job.  That is, all the personnel that was under my charge, all those that around and in the department, including, well the officials of the office.

Q.   But that is your presumption.

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

A.    Well, it is my assessment.

Q.    and you told me that you had not mentioned to anyone the reasons why you had been dismissed.

A.    I don't remember, except to Angel, that they dismissed me.  So that he would know what there was in that.

Q.    That is, that when you mentioned that your reputation upon being dismissed had been affected, what you mean to say is that no one expected you to be dismissed according to your assessment.

A.    That is correct.

Q.    Anything else?

A.    No, I have nothing else to add to that.

Q.    Do you continue to associate with the co-workers of the Bank?

A.    Negative.

Q.    Did you associate with them before?

A.    No, just in the office.

Q.    You also mentioned that people asked themselves how you were dismissed. What did you mean by that?

A.    Because they all knew, that is, they knew about the matter of Rosa Calo and where…the responsibility of what she was doing well, fell on Isaac Fernandez who was her direct supervisor.

Q.    Who knew about the matter of Rosa Calo?

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

21

A.   That is, the number of persons I am unable to tell you, but how the information was spread I don't know.

Q.   But what information was the one they learned about Rosa Calo, those persons that you don't know?

A.   Well, that I was definitely dismissed due to an adverse situation in the handling of certain checks.

Q.   That those persons who learned of that information you don't know who they are?

A.   No.

Q.   And you say that Isaac Fernandez was responsible for Rosa Calo's performance.

A.   That is correct.

Q.   I ask you perhaps Isaac Fernandez's performance was not your responsibility?

A.   Yes.

Q.   That is, in the chain of command, Isaac was responsible for Rosa Calo and you were responsible for Isaac and for Rosa also.

A.   Yes.

Q.   Do you know what position was occupied by Rosa Calo?

A.   Customer Service Officer, Clerk.

Q.   And you also told me that your health condition had been affected.  When you talked about that, did you mean that you had to visit Dr. Sanchez or any other ailment?

A.   I had to visit Dr. Sanchez, I had to go to the cardiologist.

-CERTIFIED-
To be a correct translation made and/or submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

22

Q.     You didn't see a cardiologist before?

A.     Before?  That is possible, in those sporadic check-ups.

Q.     What symptoms did you have that they took you to Dr. Sanchez?

A.     Practically total discouragement.

Q.     Discouragement.

A.     Total discouragement.  The relations at home now that my wife is not there, well became a bit difficult in all aspects including, well with my granddaughter that many times she refuted why I was in that temper aggressive, she perceived it as an aggressive nature.

Q.     That granddaughter lives with you?

A.     No, but she comes frequently.

Q.     How old is she?

A.     Ten years old.

Q.     Ten years old.  You spoke about discouragement, that the relations at home became difficult and that your granddaughter refuted that you had an aggressive nature. Those were the factors that let you to visit Dr. Sanchez?

A.     Yes, as I just said, that part and the marriage that was very delicate in all aspects, in the daily life, and intimately.

Q.     Does your wife work?

A.     That is correct.

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

what was talked about and in the other details since, I am not going into because it is a very private matter of one.

Q.   Have you sought professional help?

A.   Well, as I said, Dr. Sanchez.

Q.   No, but for the relationship as a couple.

A.   No.

Q.   No?

A.   NO.

Q.   and you have been married almost three years, no?

A.   Yes.

Q.   This is your second marriage?

A.   Third.

Q.   Third.  Previously how long were you married?

A.   Fifteen years.

Q.   Fifteen years.  And how much time passed between that second marriage and the third?

A.   About twelve years, more or less, to make the relationship strong.

Q.   You were single those twelve years?

A.   That is correct.

Q.   You say that your marriage in the intimate aspect also changed.

A.   That is correct.

Q.   In what sense?

A.   Those are details, attorney that I do not wish to go into.

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

Q.     If you do not testify now, I am going to advise you, that you cannot later testify about it another day.

A.     Yes, that is, they are private details that I do not believe I have to go into at this time.

MARTINEZ, ESQ.:

You have to answer because in this Complaint certain emotional damages are being alleged and as those emotional damages, well damages are being alleged in the couple so that you if you want to answer in the most discrete manner possible, and if counsel want to leave it there or wishes to ask further, well we can cover that alternative, but as to emotional it seems that it is a claim and that the attorney, brother counsel has both the obligation to its client as well as the right to ask about it.

DEPONENT:

Well, well definitely the intimate relationship deteriorated to such a degree that we became distanced that is intimately we became distant. Because I did not react with her, well like I was always normally.

PADILLA, ESQ.:

Q.     Since when did you become distanced?

A.     More or less, that started about two or three weeks after this situation.

Q.     Should I understand that you have no intimate relations with your wife?

A.     Very sporadically.

*

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

Q.    Did you explain to her why you were dismissed?

A.    Yes, I more or less, remember having briefed her.

Q.    What did you explain to your wife, more or less?

A.    Well, the whole situation this one about the check, about the checks that were taken by this young woman and the final effect as to my dismissal.

Q.    Why do you consider that your dismissal was wrongful?

A.    Because definitely, that is, there is no way that I could become responsible for verifying each transaction carried out in the departments I supervised and in the absence of any claim of some client that something was…did not tally or from the Accounting or Audit Department, if there was nothing to give me light about this, well at present we would still be operating the same.

Q.    For any other reason?

A.    The other situation for the dismissal, as I initially explained, well I believe that there was already a…a pre-agreement of dismissal due to my age.  Because otherwise Jaime would not be, would not have insisted so much that I, well decide to retire, including as to whether I had Social Security, did not have Social Security.

Q.    You had Social Security since you arrived at Eurobank, no?

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

A.     No.  Some three or four years later, more or less, I had Social Security in the

Bank.

Q.     Three or four years.  Did you take it about 63?

A.     Yes, the compulsive (underlined and handwritten:  compulsory) age, 63, 65, I

don't remember now exactly what year it was.  But it is it came to its...

Q.     And did you mention that to your co-workers?

A.     What?

Q.     That you received Social Security.

A.     No, just Jaime knew because he asked me one day and I told him: "Yes, I

receive Social Security."

Q.     It was that you mentioned it to him.

A.     To Jaime.

Q.     And you have told us that you understand that your dismissal was wrongful

because there was no claim from Accounting or Auditing or any other client about any

irregularity, I believe it was, it is in my notes what you just testified.

A.     Well, there had been at no time an indication that something dark existed in the

handling of anyone's cancellations, not from the clients not from Auditing, or from

Accounting.

Q.     I ask you if what the Accounts Executive told you in the end of 2006 about the

inappropriate collection of an additional penalty which motivated you to send the

communication to Isaac Fernandez about that matter, was not a

                                                 ,

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

statement about an irregularity there was in the area under your supervision?

A.      That statement as I am telling you, the Client Service Department gave him a balance and later tried to change it.

Q.      But if that Accounts Executive told you of an irregularity in an area under your supervision?

A.      Right, it is a transaction that does not affect beyond that the balance of cancellation, because it is not a client relation the Bank.

Q.      It affects the cancellation balance in that transaction, but the Accounts Executive alerted you about this situation, right?

A.      Yes, that is correct.

Q.      Therefore, if that person, you already had knowledge that there had been an irregularity with Isaac Fernandez.

A.      With that cancellation.

Q.      At least as to that cancellation.

A.      To that cancellation.

Q.      Andin the communication that you send to Isaac Fernandez at the end of 2006, you tell him he cannot charge double penalties not in that nor in other transactions, correct?

A.      That is correct.

Q.      And you answered me this morning, that you

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

have made an analysis of the contracts versus the cancellations which were being charged could discover if Isaac was complying or not with your instructions.

A.    I mentioned to you…

Q.    Yes or no?

A.    Yes, I believe so.

Q.    And you told me what?

A.    And I told them that the cancellations do not come into my hands, they went directly with the cancellation sheet to the Accounting Department, who finally tallied the case and issued the check for the excess.

Q.    If well it is true that perhaps the cancellations did not come to you, it was the Client Service Department under your supervision who determined what was the balance pending at the time that the client wanted to cancel, isn't that right?

A.    Yes, the balance is what is in the books, there was no alteration there.

Q.    But it was the Client Service Department who determined what amount the client had to pay?

A.    It informed the client.

Q.    Sure, it informed the client.

A.    But who determined what amount was in the books is in the end Accounting.

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

Q.    Sure. But the effort before the client to inform it…

A.    Is Client Service.

Q.    …what amount it had to pay before cancelling it was Client Service who informed it?

A.    Yes, not prior to cancelling, to cancel the account.

Q.    To cancel, excuse me, to cancel.  Because the Accounting Department did not work directly with the client, rather it is the Client Service Department.

A.    Client Service.

Q.    Mr. Maldonado, those specific amounts claimed in your complaint, what criteria did you use to quantify them?

A.    My legal counsel.

Q.    They were the ones who put them?

A.    They suggested.

Q.    and what information did you give them to arrive at those amounts?

A.    The ones they requested.

Q.    That was what?

A.    I don't remember to tell you.  That is, there is a matter of salaries, there is a matter of moral damages.

Q.    Of salaries.

A.    That the damages are an unquantifiable matter.

Q.    What I want to know are the elements that

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

PADILLA, ESQ.

    Perfect.

MARTINEZ, ESQ.:

    I understand that as to the other documents that were requested through the duces tecum deposition there was nothing else.

PADILLA, ESQ.:

    Well, there would only remain to learn, we can talk about that later, if aside from Mr. and Mrs. Rodriguez any additional witness will be used in which event, well some type of discovery would need to be made.  But the attorneys talk about that, that I understand there would be no objections.  We would leave it open only, well as to those aspects which remain pending.  If you have any question.

MARTINEZ, ESQ.:

    Yes, I have a few questions for Mr. Maldonado.

           …Cross-Examination…

BY MARTINEZ, ESQ.:

    For the record I am attorney Rafael Martinez Garcia.

Q.    I ask you Mr. Maldonado, prior to your dismissal, were you given any type of warning, any memo, be it oral or written that you had a deficiency in performance?

A.    In seven years, never.

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

Q.     I ask you, in any of your prior jobs were you dismissed?

A.     The last time, that is, it was in Bansander because they closed the department.

Q.     I ask you Mr. Maldonado, under your responsibilities you had to review all the transactions that were related to the cancellations?

A.     Negative.

Q.     Who had that duty?

A.     That was tallied by Accounting.

Q.     And the cancellations that came to you, why did they come to you?

A.     The ones that came to me are because they requested them directly to me.

Q.     And under what circumstances were they requested directly to you?

A.     Many times the dealer or the client trusted me and called me directly.

Q.     I ask you Mr. Maldonado if you reviewed those transactions of the documents that came to you, would you be able to determine if a double penalty was being charged or not?

A.     Absolutely, unless I didn't see the letter or I was all the account history?

Q.     And that would be the only way that you would then know if a double penalty was being charged?

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

Q.    And that number who calculated it, who ...?

A.    Client Service directly.

Q.    I ask you Mr. Maldonado you understand that Mr. Noble had knowledge about the double penalty charge?

A.    That is correct.

Q.    Did Mr. Noble ever talk to you that you should review that situation about the double penalty?

A.    Negative.

Q.    Who was your supervisor?

A.    Jaime Noble.

Q.    And he was the person responsible for your performance then?

A.    That is correct.

Q.    So that...

PADILLA, ESQ.:

    For the record only, I am attorney Padilla Velez. We object as to the manner in which brother counsel is directing the examination, they are leading questions and the deponent well he is your witness. We note for the record.

MARTINEZ, ESQ.:

Q.    So that Mr. Noble was responsible for your performance.

A.    Yes, of evaluating my performance.

Q.    That you know was Mr. Noble dismissed also for the situation for which you were dismissed?

A.    I don't know.

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts                    10

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT<br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872 (808)<br><br>SPECIAL PROCEEDINGS<br>WRONGFUL DISMISSAL |

CARLOS A. PADILLA VELEZ, ESQ.
FIDDLER GONZALEZ & RODRIGUEZ
P.O. BOX 363507
SAN JUAN, PR              00936-3507

NOTIFICATION

I CERTIFY THAT IN RELATION TO THE ABOVE CAPTIONED CASE ON APRIL 26, 2010 THE COURT ISSUED THE ORDER WHICH IS TRANSCRIBED BELOW:

MOTION FOR POSTPONEMENT OF TRIAL IN CONSIDERATION OF MOTION FOR SUMMARY JUDGMENT FILED AND REQUEST FOR ORDER.

ENCLOSURE:  ORDER

s/ KATHERYNE SILVESTRY HERNANDEZ

Judge

I ALSO CERTIFY THAT ON THIS DATE I SENT BY MAIL COPY OF THIS NOTIFICATION TO THE FOLLOWING PERSONS TO THEIR ADDRESSES INDICATED, HAVING ON THIS SAME DATE FILED IN THER ECORD A COPY OF THIS NOTIFICATION.

RUBEN T. NIGAGLIONI MIGNUCCI, ESQ.

1

PO BOX 195384                          SAN JUAN PR
                                       00919-5384

LUIS R. MALDONADO VAILLANT et al
COND SEGOVIA                           APT 1911
SAN JUAN PR                            00918

    SAN JUAN, PUERTO RICO, APRIL 28, 2010.

                REBECCA RIVERA TORRES, ESQ.
                CLERK

    BY:    S/ ILLEGIBLE
         SONIA ORTIZ
         DEPUTY CLERK

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

?

2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT<br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872 ~~(502)~~ 808<br><br>RE: ALLEGED WRONGFUL DISMISSAL |

ORDER

Upon examining the motion presented by defendant, EUROBANK, INC., for the

production of determined documents, it is granted and consequently we order:

> **Miguel Cuadros Pesquera, Esq.**
> **701 Ponce de Leon Avenue, Suite 215**
> **San Juan, PR 00907**

after the payment of any cost of reproduction, to provide to the legal representation of

defendant, Carlos A. Padilla Velez, Esq., P.O. Box 363507, San Juan, Puerto Rico

00936-3507, copy of the testimonies rendered under oath by the plaintiffs herein, in the

case of *Vicky Rodriguez et al v Government Development Bank*, USDC 09-1151 (JP).

**Register and notify**.

In San Juan, Puerto Rico, April 26, 2010.


s/

KATHERYNE D. SILVESTRY

Judge

Court of First Instance

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

1

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT<br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872  (808)<br><br>SPECIAL PROCEEDINGS<br>WRONGFUL DISMISSAL |

CARLOS A. PADILLA VELEZ, ESQ.
FIDDLER GONZALEZ & RODRIGUEZ
P.O. BOX 363507
SAN JUAN, PR                    00936-3507

NOTIFICATION

I CERTIFY THAT IN RELATION TO MOTION IN OPPOSITION ON MAY 6, 2010

THE COURT ISSUED THE ORDER WHICH IS TRANSCRIBED BELOW:

DENIED.

SEE MINUTES OF APRIL 26, 2010.

s/ KATHERYNE SILVESTRY HERNANDEZ

Judge

I ALSO CERTIFY THAT ON THIS DATE I SENT BY MAIL COPY OF THIS

NOTIFICATION TO THE FOLLOWING PERSONS TO THEIR ADDRESSES

INDICATED, HAVING ON THIS SAME DATE FILED IN THER ECORD A COPY OF

THIS NOTIFICATION.                    ,

RUBEN T. NIGAGLIONI MIGNUCCI, ESQ.

PO BOX 195384                    SAN JUAN PR
                                 00919-5384

LUIS R. MALDONADO VAILLANT et al

1

COND SEGOVIA                    APT 1911
SAN JUAN PR                     00918

SAN JUAN, PUERTO RICO, MAY 12, 2010.

REBECCA RIVERA TORRES, ESQ.
CLERK

BY:   S/ ILLEGIBLE
      SONIA ORTIZ
      DEPUTY CLERK

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT<br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872<br><br>RE:  ALLEGED WRONGFUL DISMISSAL<br>AND DAMAGES |

TRUSTEE'S MOTION TO STAY

TO THE HONORABLE COURT:

COMES NOW the Federal Deposit Insurance Corporation, as Trustee of Eurobank ("Trustee") and hereby very respectfully requests the stay of all acts and/or judicial proceedings for a period of ninety (90) days in relation to the above captioned case.  In support of this request the Trustee shall show the Court the following:

1.      On April 30, 2010 Eurobank (the "Institution") was closed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico and the Federal Deposit Insurance Corporation (the "Corporation") was appointed Trustee of the Institution (the "Trustee").  Pursuant to the laws of the United States, the Trustee is in charge of concluding the affairs of the Institution closed.

2.      The Corporation accepted the appointment of Trustee pursuant to Section 1821 (c)(3)(A) of 12 U.S.C.

3.      Pursuant to Section 1821(d)(12)(A)(ii) of 12 U.S.C., the Trustee may request the stay for a term not to exceed ninety (90) days in any action and/or judicial proceeding in which the Trustee is or becomes a party. The Trustee hereby requests the stay of the proceedings for a term of 90 days.

1

4.    If the Trustee requests the stay of any action or judicial proceeding in a court with competent jurisdiction, "...the court <u>shall</u> grant said stay to all the parties." 12 U.S.C. section 1821(d)(12)(B)(emphasis ours).

WHEREFORE, we very respectfully request this Honorable Court take notice of the above and grant the stay of the proceedings in the present case, as requested by the Trustee, the Federal Deposit Insurance Corporation.

RESPECTFULLY SUBMITTED.

I CERTIFY that on this same date I have sent a true and exact copy of this Motion to: **Ruben Nigaglioni, Esq., P.O. Box 195384, San Juan, Puerto Rico 00919-5384**.

In San Juan, Puerto Rico, May 25, 2010.

FIDDLER GONZALEZ & RODRIGUEZ PSC
P.O. BOX 363507
San Juan, Puerto Rico 00936-3507
Tel. 759-3102
Fax: 753-4237
jsanabria@fgrlaw.com


s/ illegible
JAIME L. SANABRIA MONTAÑEZ
SCPR No. 14,260

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT and VICKY RODRIGUEZ TORRES,<br><br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872<br><br>RE: ALLEGED WRONGFUL DISMISSAL AND DAMAGES |

## MOTION TO SUBSTITUTE PARTY

TO THE HONORABLE COURT:

COMES NOW the Federal Deposit Insurance Corporation, as Trustee of Eurobank ("Trustee") and very respectfully informs the court that it is a party with real interest in the above captioned case and requests the Court to substitute the Trustee for and in exchange of Eurobank. In support of its motion, the Trustee shall show the Court the following:

1.    On April 30, 2010 Eurobank (the "Institution") was closed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico and the Federal Deposit Corporation (the "FDIC") was appointed as Trustee of the Institution (the "Trustee"). See Exhibit "A." On that same date, the FDIC accepted the appoint of Trustee pursuant to 12 U.S.C. §1821(c)(3)(A). See Exhibit "B."

2.    As Trustee of Eurobank and by express provision of federal law, the FDIC as Trustee "is successor…of all the rights, titles, powers and privileges… and assets of [Eurobank]." 12 U.S.C. §1821(d)(2)(A)(i). As such, the FDIC as Trustee takes the place of Eurobank and replaces Eurobank in the litigation against it and must be substituted as party in this litigation.

1

WHEREFORE, we very respectfully request this Honorable Court take notice of the above and substitute the Federal Deposit Insurance Corporation by Eurobank as party in this litigation.

RESPECTFULLY SUBMITED.

I CERTIFY that on this same date I have sent a true and exact copy of this Motion to: **Ruben Nigaglioni, Esq., P.O. Box 195384, San Juan, Puerto Rico 00919-5384**.

In San Juan, Puerto Rico, May 21, 2010.

FIDDLER GONZALEZ & RODRIGUEZ PSC
P.O. BOX 363507
San Juan, Puerto Rico 00936-3507
Tel. 759-3102
Fax: 753-4237
jsanabria@fgrlaw.com


s/ illegible
JAIME L. SANABRIA MONTAÑEZ
SCPR No. 14,260

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

Commonwealth of Puerto Rico
Office of the Commissioner of Financial Institutions
San Juan, Puerto Rico

| | |
|---|---|
| In the matter of: | Case No.: |
| Eurobank | Re: ORDER AND APPOINTMENT OF TRUSTEE under Section 30 of Act No. 55 of May 12, 1933, known as the Banks Act |

## ORDER

The Commissioner of Financial Institutions (hereinafter the "Commissioner"), based on the grounds contained in this Order, finds that's Eurobank (hereinafter "Eurobank" or the "Bank") is not in sound economic conditions to continue its business. Therefore, pursuant to Section 30 of the Banks Act of Puerto Rico, cited below, the Commissioner has decided to immediately assume the direction and administration of Eurobank and appoint the Federal Deposit Insurance Corporation (the "FDIC") as Trustee (hereinafter the "FDIC" or the "Trustee").

## JURISDICTION

Act No. 4 of October 11, 1985, as amended, known as the "Act of the Office of the Commissioner of Financial Institutions (hereinafter referred to as "Act No. 4")[1] imposes on the Office of the Commissioner of Financial Institutions of Puerto Rico (hereinafter the "OCIF"), the responsibility of monitoring and supervising the financial institutions operating or doing business in Puerto Rico.

In harmony with Act No. 4, the Commissioner shall administer Act No. 5 of May 12, 1933, as amended, known as the "Banks Act," (hereinafter referred to as "Act No. 55").[2] Act No. 55 authorizes the Commissioner to monitor and regulate the operations

---

[1]     7 L.P.R.A. sections 2001 et seq.
[2]     7 L.P.R.A. sections 1 et seq.

1

of all corporations engaged in the banking business in Puerto Rico.  Pursuant to the provisions of Act No. 55, all banks engaged in banking business for all purposes, is obligated to comply with the provisions of the Law and the applicable regulation.

Act No. 55 grants the OCIF primary jurisdiction over the matter object of this Order.  Therefore the Commissioner issues the same under the aforementioned legal provisions, as it understands that Eurobank is not in sound economic condition to continue operating its banking business.

## FINDINGS OF FACT

1.  Eurobank is a corporation which operates as a commercial bank subject to the provisions of Act No. 55.

2.  On October 9, 2009, the FDIC issued an Order to Cease and Desist, in which, among other things, it required Eurobank to submit to an acceptable capitalization plan to obtain and maintain sufficient capital in the bank.

3.  Eurobank has not complied with the capitalization requirement of the aforementioned Order to Cease and Desist.

4.  On April 27, 2010, the FDIC issued to the Bank a formal notice titled "Notification of Formal Enforcement Action" (hereinafter the "Notification").

5.  The FDIC issued the Notification to formally notify Eurobank of the findings of a joint examination performed by the FDIC and the OCIF.

6.  The findings were informed to the management and officials of the Bank in a meeting held on April 27, 2010.  Similarly, the findings were informed to the

2

Board of Directors of Eurobank in a meeting held on April 28, 2010.   Both meetings were held with representatives of the FDIC, with the Commissioner and other representatives of the OCIF.

7.     Specifically, the FDIC issued the Notification to formally notify Eurobank that in light of the findings of a joint examination realized by the FDIC and OCIF, the bank was in a "critically deficient" situation.

8.     In the Notification issued by the FDIC, Eurobank was advised that in light of the provisions of Section 38 of the Federal Deposit Insurance Act (the "FDIA"), 12 U.S.C. §1831o, Eurobank is in a condition described therein as critically deficient.

9.     In the Notification, the FDIC informs Eurobank that in view of the findings contained in the Notification, the FDIC has determined pursuant to Section 38 of the FDIA, 12 U.S.C. §1831o, Eurobank is considered within the category of "critically undercapitalized,"   reason why the FDIC is obligated to require Prompt Corrective Action (hereinafter "PCA") on the part of the Bank.

10.    Based on the need to take measures of PCA in the aforementioned Notification, the FDIC advised Eurobank that as of that moment it was prohibited, among other things, to request, accept, renew or extend any 'brokered deposit.'   This prohibition is applicable to banks that do not have sufficient capital under Section 337.6(b) of the rules and regulations of the FDIC, 12 C.F.R. §337.6(b) (3).

11.    Given the prohibition of the FDIC, the inability of Eurobank to procure brokered deposits has the effect of putting at risk its liquidity, by facing the probability of not counting with sufficient funds to address the withdrawal of deposits and payment order requests.

3

12. As informed to the officials, management and the Board of Directors of the Bank, Eurobank's financial situation is the following:

   a. the amount of the assets of Eurobank is critically deficient and presents an imminent threat to the viability of the Bank.

   b. Eurobank's reserve for losses in classified loans is seriously insufficient.

   c. by considering the operational losses and provisions required for the classified loan reserve of Eurobank the Bank's capital is deficient and threatens the viability of the Bank.

13. Based on the above, both the FDIC as well as the OCIF has concluded that the precarious situation of Eurobank represents an imminent danger to the depositors and creditors of the Bank in particular and to the general public well-being, all of which justifies the present action.


CONCLUSIONS OF LAW

Article 10(16) of Act No. 4[3] authorizes the Commissioner to:

   …

   (16) Accept, at its sole discretion, any report of examination or investigation report of any other supervisory agency of financial institutions of any other jurisdiction, with concurrent jurisdiction over a financial institution organized or doing business in Puerto Rico, in substitution of the examination or investigation of such financial institution by the Commissioner.

On its part, section 30 of Act No. 55[4] provides that:
   ,
   If as a result of an examination made or a report given by an examiner, the Commissioner has evidence that a bank or

---

[3]   7 L.P.R.A. sec. 2010(16).
[4]   7 L.P.R.A. Sec. 201.

foreign bank is not in sound economic condition to continue the business, or that it is administered in such manner that the public or the persons and entities who have funds or securities under its custody are at risk of being defrauded, the Commissioner shall assume the direction and administration of the bank, promptly appoint a trustee, which in the case of insured banks may be the Federal Deposit Insurance Corporation, and immediately inform the details and grounds for its acts to the Government of Puerto Rico. The trustee thus appointed shall administer the bank pursuant to the provisions of [this Act No. 55] and of the regulations promulgated under the same.

Said trusteeship shall end with the total liquidation of the bank if necessary, or when the operations of the same as certified by the trustee, allow, in the opinion of the Commissioner, to return the administration of the bank to its officials and officers, duly elected and appointed, under those circumstances stipulated by the Commissioner. The Commissioner may fix a reasonable compensation for the services of the trustee and its employees.   The determination of the Commissioner to assume the administration and direction of a bank or to appoint a trustee may be reviewed by the Court of First Instance, Superior Part San Juan, by petition filed within the term of ten (10) days counted as of the date of the decision.

As aforementioned, the FDIC and the OCIF have concluded that Eurobank is not in sound economic condition to continue its business and its precarious situation represents an imminent danger to the public well-being, which justifies this immediate action.

ORDER

BASED ON THE ABOVE, IT IS DECLARED AND ORDERED:

1.    The Commissioner assumes the direction and administration of Eurobank.

2.    In this same act the Commissioner appoints the FDIC as Trustee of Eurobank.

### FOREWARNINGS

Pursuant to Section 30 of Act No. 55, Eurobank is entitled to request judicial review of the decision of the Commissioner to assume the administration and direction of the bank and to appoint the Trustee by special petition for judicial review filed within the term of ten (10) days counted form the date of the Commissioner's decision.

At the request of the party affected by this Order and pursuant to section 3.17 of Act No. 170, the OCIF is prepared and in a position to promptly proceed to carry out any administrative procedure, including the holding of an emergency administrative hearing. Said petition shall be in writing to that effect, addressed to the Commissioner of Financial Institutions and filed in the Office of the Commissioner of Financial Institutions, 6th Floor, Centro Europa Building, 1492 Ponce de Leon Avenue, San Juan, P.R. 00907-4024.

Should the emergency administrative hearing be held, due to the nature of the extraordinary circumstances involved in this matter, pursuant to Section 3.9 of the UAPA, 3 L.P.R.A. §2159, it is hereby authorized to shorten the terms provided in Regulation No. 3920 of June 23, 1989, as amended, known as "Regulation to Regulate the Adjudication of Proceedings under the Jurisdiction of the office of the Commissioner of Financial Institutions."

The filing of a motion requesting hearing shall not stay, nor modify in any manner the terms of this ORDER unless the Commissioner or a Court with competence provides otherwise.

Issued in San Juan, Puerto Rico, April 30, 2010.

*This Order is effective immediately*.

*REGISTER AND NOTIFY.*

s/ illegible
Alfredo Padilla Cintron
Commissioner of Financial Institutions

## CERTIFICATION OF PERSONAL SERVICE

I HEREBY CERTIFY that I personally delivered a true and exact copy of this ORDER

today, April 30, 2010, by hand to an official or director of Eurobank and to the Trustee,

by delivery to an authorized representative of the same.

Signed by: s/

Name: Griselle Morales Rodriguez, Esq.

Title: General Legal Counsel – OCIF

Received by:  s/ illegible

(Signature of official or director of the Bank)

Name: Rafael Arrillaga

Title:  chairman (illegible)

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

7

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT<br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872  (808)<br><br>SPECIAL PROCEEDINGS<br>WRONGFUL DISMISSAL |

CARLOS A. PADILLA VELEZ, ESQ.
FIDDLER GONZALEZ & RODRIGUEZ
P.O. BOX 363507
SAN JUAN, PR                    00936-3507

NOTIFICATION

I CERTIFY THAT IN RELATION TO MOTION REQUESTING ORDER ON MAY 26, 2010 THE COURT ISSUED THE ORDER WHICH IS TRANSCRIBED BELOW:

GRANTED.

STAYED NINENTY (90) DAYS.


s/ KATHERYNE SILVESTRY HERNANDEZ

Judge

I ALSO CERTIFY THAT ON THIS DATE I SENT BY MAIL COPY OF THIS NOTIFICATION TO THE FOLLOWING PERSONS TO THEIR ADDRESSES INDICATED, HAVING ON THIS SAME DATE FILED IN THER ECORD A COPY OF THIS NOTIFICATION.

RUBEN T. NIGAGLIONI MIGNUCCI, ESQ.,

PO BOX 195384                    SAN JUAN PR
                                 00919-5384

JAIME L. SANABRIA
PO BOX 363507
                                 SAN JUAN PR
                                 00936-3507

1

LUIS R. MALDONADO VAILLANT et al
COND SEGOVIA                      APT 1911
SAN JUAN PR                      00918

SAN JUAN, PUERTO RICO, JUNE 3, 2010.

REBECCA RIVERA TORRES, ESQ.
CLERK

BY:   S/ ILLEGIBLE
      SONIA ORTIZ
      DEPUTY CLERK

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART SAN JUAN

| | |
|---|---|
| LUIS R. MALDONADO VAILLANT<br>Plaintiffs,<br><br>V<br><br>EUROBANK, INC.<br><br>Defendant. | CIVIL NO.: KPE2008-0872  (808)<br><br>SPECIAL PROCEEDINGS<br>WRONGFUL DISMISSAL |

CARLOS A. PADILLA VELEZ, ESQ.
FIDDLER GONZALEZ & RODRIGUEZ
P.O. BOX 363507
SAN JUAN, PR                         00936-3507

## NOTIFICATION

I CERTIFY THAT IN RELATION TO MOTION FOR SUBSTITUTION OF PARTY

ON MAY 28, 2010 THE COURT ISSUED THE ORDER WHICH IS TRANSCRIBED

BELOW:

SUBSTITUTE.


s/ KATHERYNE SILVESTRY HERNANDEZ

Judge

I ALSO CERTIFY THAT ON THIS DATE I SENT BY MAIL COPY OF THIS

NOTIFICATION TO THE FOLLOWING PERSONS TO THEIR ADDRESSES

INDICATED, HAVING ON THIS SAME DATE FILED IN THER ECORD A COPY OF

THIS NOTIFICATION.

RUBEN T. NIGAGLIONI MIGNUCCI, ESQ.

PO BOX 195384                         SAN JUAN PR
                                      00919-5384

JAIME L. SANABRIA
PO BOX 363507                          SAN JUAN PR
                                       00936-3507

LUIS R. MALDONADO VAILLANT et al
COND SEGOVIA                           APT 1911
SAN JUAN PR                            00918

SAN JUAN, PUERTO RICO, JUNE 3, 2010.

REBECCA RIVERA TORRES, ESQ.
CLERK

BY:   S/ ILLEGIBLE
      SONIA ORTIZ
      DEPUTY CLERK

-CERTIFIED-
To be a correct translation made and/or
submitted by the interested party

Certified Court Interpreter Administrative
Office of the United States Courts

2